19-857 (L)
*Kellogg v. Mich. Millers Mut. Ins. Co.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of October, two thousand and twenty.

Present:
> ROBERT A. KATZMANN,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> > *Circuit Judges*,

———————————————

TROY D. KELLOGG, SHARON KELLOGG,

> *Plaintiffs-Appellees-Cross-Appellants*,

> v.                                                                     19-857-cv, 19-871-cv

MICHIGAN MILLERS MUTUAL INSURANCE
COMPANY,

> *Defendant-Appellant-Cross-Appellee*.†

———————————————

† The Clerk of the Court is directed to amend the caption as set forth above.

_____

For Plaintiffs-Appellees-Cross-Appellants:　　MATTHEW F. BELANGER, Faraci Lange, LLP, Rochester, NY.

For Defendant-Appellant-Cross-Appellee:　　DAN D. KOHANE, Hurwitz & Fine, P.C., Buffalo, NY.

Appeal from the United States District Court for the Western District of New York (Payson, *M.J.*)

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **VACATED IN PART**, **REVERSED IN PART**, and **AFFIRMED IN PART**, and the case **REMANDED**.

The parties cross-appeal from a final Decision and Order dated March 7, 2019, in the United States District Court for the Western District of New York (Payson, *M.J.*), declaring that Troy Kellogg does not qualify for Personal Injury Protection ("PIP") or Additional Personal Injury Protection ("APIP") insurance coverage, but that he does qualify for Auto Medical Payments ("MedPay") and Supplementary Uninsured/Underinsured Motorists Endorsement ("SUM") insurance coverage. We assume the parties' familiarity with the facts, the procedural context, and the issues on appeal.

As an initial matter, although the parties continue to engage on the issue of Michigan Millers Mutual Insurance Company's ("Michigan Mutual") liability under the PIP policy, Michigan Mutual paid PIP benefits to Kellogg in the amount of $50,000 prior

to the district court's decision. *See Kellogg v. Mich. Millers Mut. Ins. Co.*, No. 17-cv-6242, 2019 WL 1083026, at *3 n.2 (W.D.N.Y. Mar. 7, 2019). Because the coverage limit under the PIP policy at the time of the accident was $50,000, Kellogg received all the relief he ultimately sought under that policy. As a result, Kellogg's claim regarding the PIP coverage is moot and the district court's ruling as it pertains to the PIP coverage must be vacated.[1]

Turning to the APIP coverage, Kellogg's eligibility under the APIP policy required that he "sustain[] personal injury arising out of the use or operation of the insured motor vehicle while occupying the insured motor vehicle." J.A. 205.[2] Because Michigan Mutual conceded that "for the purposes of . . . APIP coverage, whether Kellogg was 'occupying' the tow truck at the time of the accident is irrelevant," *Kellogg*, 2019 WL 1083026, at *4 n.3, the only remaining issue is whether Kellogg's injury arose out of his use or operation of the tow truck.

Kellogg argues that he was "using" the covered tow truck when he was injured, and thus is entitled to a payout under that policy. Kellogg Br. at 30. The district court agreed that Kellogg was using the tow truck in some capacity, but the district court nevertheless denied APIP coverage. Relying on *Walton v. Lumbermens Mut. Cas. Co.*, 88

---

[1] Michigan Mutual does not seek return of the money from Kellogg but will attempt "to recoup that benefit through coverage litigation with the insurers of the other vehicles involved in the accident." *Kellogg*, 2019 WL 1083026, at *3 n.2.

[2] References to J.A. refer to the Joint Appendix.

3

N.Y.2d 211 (1996), the court concluded that Kellogg failed to demonstrate that his use of the truck "was a proximate cause of his injuries or that it was the instrumentality that produced" his injuries. *Kellogg*, 2019 WL 1083026, at *6. In our view, the district court misapplied *Walton*.

In *Walton*, the plaintiff was injured by a "levelator"—a device that creates a ramp between a truck bed and a loading dock—as he was unloading his truck, and he sought to claim first-party no-fault benefits from the insurer of the truck. *See* 88 N.Y.2d at 213. The levelator was not part of the truck. *Id.* When the levelator tipped over, throwing the plaintiff to the ground, he was, in some sense, injured while using or operating the truck. *See id.* Nevertheless, the Court of Appeals concluded that, although someone who was unloading a truck "may be using it within the meaning of the statute, . . . that does not necessarily mean that his or her injuries *arose out of* the use of the vehicle." *Id.* at 216 (emphasis added).

Of particular relevance to the holding in *Walton* was the fact that the "plaintiff's injury was caused by an instrumentality other than the insured vehicle," meaning that the truck's operation and use was not "a proximate cause of the injury." *Id.* at 214, 216. This proximate-cause distinction recognized by the Court of Appeals reflected the legislature's intention to "draw a line between motor vehicle accidents and all other types of torts." *Id.* at 214. Ultimately, the Court of Appeals reasoned that "no-fault liability will not attach when the *injury is caused by something other than a motor vehicle* because in such

4

circumstances the incident cannot be considered an accident related to the use of the motor vehicle." *Id.* at 215–16 (emphasis added).

The instant case presents a wholly different scenario than *Walton*, one that fits well within both the statutory language and the purpose of New York's no-fault insurance law. At the time of the accident, Kellogg was using the tow truck's winch cable to pull a vehicle out of a ditch, an activity plainly related to the vehicular nature of the insured automobile. And the injury itself was caused by a third vehicle "that had lost control while exiting the Thruway at Exit 45." *Kellogg*, 2019 WL 1083026, at *2. This, undoubtedly, was a "motor vehicle accident[]" covered under the APIP policy. *Walton*, 88 N.Y.2d at 214. Kellogg is therefore entitled to APIP coverage, and we reverse the district court's decision insofar as it is inconsistent with this conclusion.

Finally, as for Michigan Mutual's contention that Kellogg was not "occupying" the covered tow truck within the meaning of the MedPay and SUM policies, the undisputed facts of the case prove otherwise. At all times leading up to the collision, Kellogg was in, around, next to, or using the covered tow truck. And the parties agree that at the specific moment of impact, Kellogg "was in the process of detaching the tow truck's cable from the strap attached to the Liamero vehicle." *Kellogg*, 2019 WL 1083026, at *9. At the very least, then, Kellogg was "vehicle oriented," thus falling within the broad ambit of what it means to "occupy" a vehicle under the no-fault law. *See Colon v. Aetna Cas. & Sur. Co.*, 48 N.Y.2d 570, 574 (1980) (citing cases). The district court was therefore correct in

5

concluding that Kellogg is entitled to coverage under the MedPay and SUM policies, and we affirm this portion of the district court's order.

Accordingly, for the reasons set forth above, the order of the district court is **VACATED IN PART**, **REVERSED IN PART**, and **AFFIRMED IN PART**, with costs to plaintiffs-appellees-cross-appellants, and we **REMAND** with instructions to enter a declaratory order consistent with this opinion.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk